**KOLLER LAW LLC**
David M. Koller, Esquire (90119)
Jordan D. Santo, Esquire (320573)                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SARAH CHARLEBOIS,** | : | |
| **220 Pixie Moss Road** | : | **Civil Action No.** |
| **Pottstown, PA 19464** | : | |
| **Plaintiff,** | : | |
| v. | : | **COMPLAINT AND** |
| | : | **JURY DEMAND** |
| **REIDENBACH & ASSOCIATES, LLC** | : | |
| **724 W Lancaster Avenue, Suite 215** | : | |
| **Wayne, PA 19087** | : | |
| **Defendant.** | : | |

## CIVIL ACTION

Plaintiff, Sarah Charlebois (hereinafter "Plaintiff"), by and through her attorney, brings this civil matter against Defendant, Reidenbach & Associates, LLC (hereinafter, "Defendant"), alleging she was subject to unlawful violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Pennsylvania Human Relations Act ("PHRA"), and avers and alleges as follows:

## THE PARTIES

1. Plaintiff is an adult individual domiciled in the above captioned address.

2. Defendant is a law firm with a location and corporate headquarters located at 724 W Lancaster Avenue, Suite 215, Wayne, PA 19087.

3. At all relevant times hereto, Defendant employed the requisite number of employees under the applicable statutes and was a covered entity.

4. At all times hereto, Defendant employed managers, supervisors, agents and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decision, these individuals engaged in the practice of treatment which forms the basis of Plaintiff allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents and employees who acted directly or indirectly in the interest of the employer. In so acting these individuals engaged in the pattern and practice of treatment which forms the basis of the Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original

2

jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in the judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under Title VII and the PHRA.

13. Plaintiff filed a timely written Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC"), signed September 30, 2025, alleging sexual harassment and retaliation against Defendant.

14. The Charge was assigned a Charge Number of 530-2025-10454 and Plaintiff requested the charge be dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") by request and that Notice is dated January 29, 2026. Plaintiff received the notice by electronic mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to her PHRA claims.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. On or about February 22, 2016, Defendant hired Plaintiff in the position of Executive Assistant.

21. Plaintiff was well qualified for her position and performed well.

22. In or around the spring of 2018, Defendant promoted Plaintiff to the position of Director of Operations.

23. Plaintiff was well qualified for her position and performed well.

24. In or around the summer of 2024, Defendant promoted Plaintiff to Director of Operations and Human Resources.

25. Plaintiff was well qualified for her position and performed well.

### DEFENDANT REFUSED PLAINTIFF'S ACCOMMODATION REQUEST TO WORK FROM HOME IN ORDER TO FEED HER INFANT DAUGHTER

26. In or around March 2023, Plaintiff gave birth to her daughter.

27. However, Plaintiff's infant daughter lost the reflex to suck/swallow which resulted in her being unable to physically eat.

28. Plaintiff was required to exclusively breast feed her infant daughter.

29. Plaintiff informed Scott Reidenbach, Owner, of her daughter's condition and requested the accommodation to work remotely in order to feed her daughter.

30. However, Reidenbach refused to accommodate Plaintiff.

## PLAINTIFF ATTEMPTED TO RESIGN DUE TO DEFENDANT'S REFUSAL TO ACCOMMODATE HER, BUT REIDENBACH REFUSED

31. In or around July 2023, Plaintiff informed Rachel Schoenlien, Human Resources, that she was going to have to resign as a result of Reidenbach refusing to accommodate her.

32. Reidenbach immediately called Plaintiff and informed her that "[she] was not allowed to quit" or words to that effect.

33. Defendant would transition her to an hourly pay structure as opposed to salary.

34. Despite this, Plaintiff continued to perform her job duties effectively.

## PLAINTIFF ATTEMPTED TO RETURN BACK TO WORK FULL-TIME, BUT REIDENBACH REFUSED

35. In November 2023, Plaintiff notified Reidenbach that her daughter's medical conditions had resolved and requested to return back to work full-time.

36. However, Reidenbach refused.

## REIDENBACH PROMOTED PLAINTIFF, BUT REFUSED TO ALLOW HER TO RETURN TO WORK AT FULL-TIME HOURS OR BE SALARIED

37. In or around the summer of 2024, Defendant promoted Plaintiff to Director of Human Resources.

38. However, Reidenbach continued to refuse to allow Plaintiff to return to work full-time hours or be salaried.

## REIDENBACH BEGAN TO SEXUALLY HARASS PLAINTIFF

39. In or around March 2025, Reidenbach engaged in repeated and egregious misconduct.

40. These conversations were unwelcome, humiliating, and entirely unrelated to her professional role.

41. Reidenbach demanded that they move their messaging to WhatsApp.

5

42. He later told Plaintiff that she was the only employee he was texting on WhatsApp.

## REIDENBACH PURCHASED PLAINTIFF GIFTS IN AN ATTEMPT TO ELICIT AN INTIMATE RELATIONSHIP

43. In or around March 2025, Plaintiff met with Reidenbach regarding her full workload but was not scheduled for full-time hours.

44. Reidenbach responded that he wanted to start doing things for her and take care of her, or words to that effect.

45. Reidenbach mentioned he could offer her a salary, but that this way would be more fun.

46. Reidenbach attempted to entangle Plaintiff in an exchange of sexual favors for gifts.

47. He purchased her gifts, such as a nail salon gift card, and then demanded that she obtain a French manicure, send him pictures, and when she did, he replied, "Hot!".

48. He explicitly tied the gifts to expectations of sexual or romantic reciprocation, asking her, "Now that I got you a gift, what are you going to do for me?"

49. Reidenbach frequently and repeatedly asked Plaintiff if she was enjoying the special treatment and if she had given any thought on how she could "return the favor" and/or "please [him]".

50. Plaintiff informed Reidenbach that the special treatment was not necessary and not wanted.

## REIDENBACH PURCHASED PLAINTIFF A GYM MEMBERSHIP

51. In or around the same time, Reidenbach purchased a gym membership for Plaintiff, stating that he did so to ensure she kept her body in shape and "looked good", further sexualizing and objectifying her in her role as an employee.

## REIDENBACH PRESSURED PLAINTIFF TO SOCIALIZE WITH HIM AFTER WORK, CLAIMING IT WAS WORK-RELATED

52. Reidenbach frequently pressured Plaintiff to see him after work.

53. When she declined, he would threaten to make their meetings "mandatory" so that her husband would be forced to allow her to attend.

54. Reidenbach pressured Plaintiff to meet him for drinks under false pretenses by suggesting the meeting was work-related.

55. Once there, his intentions were unmistakably personal and sexual.

## REIDENBACH SEXUALLY HARASSED PLAINTIFF WHEN HE TOOK HER TO THE FITLER CLUB

56. In or around the spring of 2025, Reidenbach took Plaintiff to the Fitler Club on two (2) occasions all while she was on work time and in a position where she could not freely refuse.

57. During the car ride, Reidenbach wanted Plaintiff to reiterate her understanding of his wants and needs, and to inform him of things that Plaintiff thought of to please/pleasure him.

58. Additionally, during the car ride, Reidenbach informed Plaintiff that his marriage was "business-like and transactional" and that their sex life was lacking, or words to that effect.

59. He mentioned that he usually slept in their guest room, away from his wife.

60. During lunch at the Fitler Club, Reidenbach mentioned that someone Plaintiff knew very well was getting a divorce.

61. Considering the conversation from earlier in the morning, Plaintiff assumed that he was referring to his marriage.

62. Plaintiff did not ask further questions and pretended not to know who he was referring to.

63. Reidenbach told Plaintiff that if a marriage is doing well, but lacking in sex, there is no harm to get those pleasures from someone else to be "whole in your marriage" or words to that effect.

64. Reidenbach suggested they go look at a hotel room upstairs.

7

65. He further suggested that they go into the hot tub together and get massages next time they went to the Fitler Club.

66. Plaintiff denied Reidenbach's sexual advances.

67. Reidenbach had repeatedly told Plaintiff that she is too important to leave and that she "cannot" leave him, creating an environment of intimidation and control.

## REIDENBACH PRESSURED PLAINTIFF TO VISIT HIS HOUSE IN SOUTH CAROLINA

68. Reidenbach also invited Plaintiff to his house in South Carolina for the weekend, where it would be "less work and more play", or words to that effect.

69. Plaintiff declined Reidenbach's invitation.

70. Plaintiff attempted to deflect, downplay, or act as though she did not understand his advances to avoid confrontation, but at no time did she welcome or consent to this misconduct.

## REIDENBACH PRESSUED PLAINTIFF TO HAVE DRINKS WITH HIM BEFORE HE LEFT ON VACATION

71. In June 2025, Reidenbach persistently asked Plaintiff to have drinks with him after work before he went on vacation for the summer.

72. He mentioned his wife was leaving for vacation a few days before him and that he wanted to meet with Plaintiff once his wife left.

73. Plaintiff agreed to go, as she felt pressured due to him being her supervisor.

## REIDENBACH MADE SEXUALLY INAPPROPRIATE COMMENTS TO PLAINTIFF AND WANTED HER TO TRY ON REVEALING CLOTHING FOR HIM TO SEE

74. Reidenbach told Plaintiff that she was "like [his] girlfriend but, unfortunately without the sex", or words to that effect.

75. He then took her to Free People and wanted her to try on a pair of short and revealing shorts,

so he could see her in them.

## AT DINNER, REIDENBACH ASKED PLAINTIFF MULTIPLE SEXUALLY HARASSING QUESTIONS AND DETAILED HOW HE LOST HIS VIRGINITY

76. At dinner that same evening, Reidenbach talked about sex and asked Plaintiff a series of sexually inappropriate and harassing questions:

    a. If she was a sexual person, and on a scale of 1-10?

    b. What sexually pleasures her?

    c. If she watches pornography and touches herself?

    d. If she gets enough sexual pleasure?

    e. How she lost her virginity?

77. Plaintiff was offended and uncomfortable with Reidenbach's egregious line of questioning.

78. When she tried to redirect the question, Reidenbach enthusiastically described to Plaintiff how he had lost his virginity.

79. Plaintiff informed Reidenbach that she had to leave to go home and take care of her kids.

80. Reidenbach later sent Plaintiff a text message with additional details about how he had lost his virginity.

## REIDENBACH RETURNED FROM VACATION AND INSISTED ON SOCIALIZING WITH PLAINTIFF AFTER WORK

81. The following week, Reidenbach returned to the office and insisted on socializing with Plaintiff after work.

82. Plaintiff informed Reidenbach that she was not available, despite Reidenbach stating that he had extended his stay to socialize with Plaintiff.

## PLAINTIFF LEARNED THAT REIDENBACH HAD A HISTORY OF SEXUALLY HARASSING FEMALE COWORKERS

83. In or around early July 2025, Plaintiff learned that Reidenbach had a long-standing pattern of sexually harassing multiple female employees, making sexually inappropriate comments, and engaging in physical misconduct such as touching their legs and hips and rubbing their backs, etc.

84. This establishes that Defendant was aware, or should be aware, of his predatory conduct, yet has permitted it to continue unchecked.

**REIDENBACH INFORMED PLAINTIFF THAT HE WAS RETURNING TO PENNSYLVANIA AND INSISTED THAT THEY MEET FOR DRINKS AFTER WORK**

85. In early August 2025, Reidenbach informed Plaintiff that he was returning from South Carolina shortly and began to exert pressure on Plaintiff, insisting that she meet him for drinks upon his return.

**PLAINTIFF WAS CONSTRUCTIVELY DISCHARGED**

86. On or about August 5, 2025, Plaintiff resigned from Defendant due to Reidenbach's severe and pervasive sexual harassment.

87. Plaintiff was constructively discharged.

88. Defendant subjected Plaintiff to quid pro quo sexual harassment, a hostile work environment, and retaliation for resisting Reidenbach's sexual advances in violation of Title VII and the PHRA.

89. Defendant's acts and/or omissions were willful or with reckless disregard to Plaintiff's federal statutory rights.

**COUNT I – SEXUAL HARASSMENT – *QUID PRO QUO***
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

90. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

10

91. Plaintiff is a member of a protected class (female).

92. Plaintiff was subject to unwelcome sexual conduct by her supervisor.

93. The conduct was intentional and based upon Plaintiff's gender.

94. Submission to the unwelcome conduct and sexual advances was a condition of Plaintiff's employment.

95. Defendant's acts and/or omissions were willful or performed with reckless disregard to her federal statutory rights.

96. As a result of Defendant's conduct as aforementioned, Plaintiff has suffered damages as set forth herein.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT II – SEXUAL HARASSMENT – *QUID PRO QUO* PENNSYLVANIA HUMAN RELATIONS ACT

97. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

98. Plaintiff is a member of a protected class (female).

99. Plaintiff was subject to unwelcome sexual conduct by her supervisor.

100.    The conduct was intentional and based upon Plaintiff's gender.

101.    Submission to the unwelcome conduct and sexual advances was a condition of Plaintiff's employment.

102.    As a result of Defendant's conduct as aforementioned, Plaintiff has suffered damages as set forth herein.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this

Complaint, *infra.*

## COUNT III – SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

103.   Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

104.   Taken together, the acts outlined above constitute a hostile work environment based on sex.

      a.  Plaintiff suffered intentional discrimination because of her membership in a protected class – female.

      b.  Such discrimination was severe or pervasive.

      c.  Such discrimination detrimentally affected Plaintiff.

      d.  Such discrimination would have detrimentally affected a reasonable woman in Plaintiff's position.

105.   The unlawful employment practices outlined above were intentional.

106.   Plaintiff suffered tangible employment actions as alleged herein.

107.   Defendant knew or reasonably should have known of the sexual harassment.

108.   Defendant failed to exercise reasonable care to prevent and promptly correct the harassing behavior.

109.   Defendant's acts and/or omissions were willful or performed with reckless disregard to her federal statutory rights.

110.   As a result of Defendant's conduct as aforementioned, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this

Complaint, *infra.*

## COUNT IV – SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT
## PENNSYLVANIA HUMAN RELATIONS ACT

111.    Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

112.    The foregoing conduct created a sexually hostile work environment for Plaintiff.

113.    Plaintiff suffered intentional discrimination because of her sex.

114.    Defendant subjected Plaintiff to unwelcome conduct of a sexual nature that was severe or pervasive.

115.    The discrimination detrimentally affected Plaintiff.

116.    Plaintiff suffered tangible employment actions as alleged herein.

117.    The discrimination would detrimentally affect a reasonable woman in Plaintiff's position.

118.    Defendant knew or reasonably should have known of the sexual harassment.

119.    Defendant failed to exercise reasonable care to prevent and promptly correct the harassing behavior.

120.    As a result of Defendant's conduct as aforementioned, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT V – RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

121.    Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

122.    Plaintiff denied her supervisor's sexual advances.

123.    Defendant took adverse employment actions against Plaintiff, including, but not limited

13

to, constructive discharge.

124. There exists a causal connection between Plaintiff's denial of sexual advances and the adverse employment action.

125. Defendant constructively discharged Plaintiff's employment as a result of her denial of the sexual advances.

126. Defendant's acts and/or omissions were willful or with reckless disregard for her federal statutory rights.

127. As a result of Defendant's unlawful retaliation, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VI – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

128. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

129. Plaintiff denied her supervisor's sexual advances.

130. Defendant took adverse employment actions against Plaintiff, including, but not limited to, constructive discharge.

131. There exists a causal connection between Plaintiff's denial of the sexual advances and the adverse employment action.

132. Defendant constructively discharged Plaintiff's employment as a result of her denial of the sexual advances.

133. As a result of Defendant's unlawful retaliation, Plaintiff has suffered damages as set forth herein.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Sarah Charlebois, requests that the Court grant her the following relief against Defendant:

(a) Damages for past and future monetary losses as a result of Defendant unlawful discrimination;

(b) Compensatory damages;

(c) Punitive damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with them, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII and the PHRA.

(j) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for her adverse actions, disciplines, and termination; and

(k) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

15

# <u>CERTIFICATION</u>

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

**KOLLER LAW LLC**

Date: March 4, 2026

By:    */s/ David M. Koller*
David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215)-545-8917
F: (215)-575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*